Levine, J.
In this case, we are confronted with facts that are highly unusual to say the least. In this case, an assistant state attorney assigned to appellant’s case filed a criminal information, offered appellant a plea deal, and provided discovery. Later in the same exact case, under circumstances not fully developed in this record, the very same prosecutor became appellant’s defense attorney at trial. Only after appellant was convicted, but before sentencing, did appellant bring this apparent conflict situation to the attention of the trial court.
Thus, we are confronted with the following issue: does the fact that appellant’s defense attorney was originally the prosecutor on the very same case require a reversal. We decline to adopt a “per se” rule, and And that although this factual situation presents, at least facially, a situation prompting possible ethical concerns, that nonetheless, we must make a determination on a case-by-case basis of whether appellant’s counsel labored under an actual conflict of interest. As to the present case, we find that the record before us does not support a finding that any potential conflict adversely affected trial counsel’s performance. Thus, we affirm.
Appellant was charged by criminal information with burglary of a dwelling, third-degree grand theft, dealing in stolen property, and several counts of giving false information to a pawnbroker.[1] This criminal information and a subsequent amended information were signed by an assistant state attorney. This particular prosecutor also signed several filings on behalf of the state, including a demand for notice of alibi, three supplemental aijswers to appellant’s request for discovery, and finally, a conditional plea offer of fifteen years in prison. This prosecutor appeared in court on behalf of the state on this case for two hearings. Appellant apparently was not at either of the two hearings, which included a calendar call.
This prosecutor stopped appearing on behalf of the state on April 18, 2014, when another prosecutor began submitting filings on behalf .of the state. On April 16, 2015, previous private counsel withdrew from representing appellant, and the very same prosecutor, now a former prosecutor, who filed the information against appellant was retained as appellant’s new private counsel. As .appellant’s new counsel, she announced that she was ready to go to trial and did not inform the court of her prior prosecutorial role.
At trial, there was testimony that the victim, appellant’s sister, told police she had come home to find it in disarray with the window to her bedroom broken. Many of her personal belongings were also missing. The victim speculated that the perpetrator was her brother, appellant. Law enforcement found much of the victim’s missing property at pawnshops, and surveillance footage and testimony of the pawnshop employees identified appellant as the one who had pawned the victim’s property. The victim’s missing property was also found at a hotel where appellant was staying. At trial, however, appellant’s sister said she was mistaken when she initially accused appellant of stealing from her. The state introduced tapes of appellant admitting to stealing from the victim. *635 In. these tapes, .appellant also encouraged the victim to lie on his behalf.. Appellant was found guilty of all charges.
After being found- guilty, appellant moved to discharge his counsel, believing that she did an inadequate job in his case. In appellant’s motion to discharge, appellant stated that he “has become aware that [his attorney] was also his prosecutor in the instant case which is now before the court.” Appellant then moved for a mistrial based on this conflict. At a subsequent hearing, appellant’s counsel stated that she could not “ethically” represent appellant any longer. After a Faretta[2] hearing, the trial court found appellant competent to represent himself, and appellant, acting pro se, moved for a mistrial. The trial court took the motion for mistrial “under advisement.”
At sentencing, appellant moved to discharge his new counsel, a public defender, claiming that the public defender was doing an inadequate job. The trial-court proceeded with sentencing and did not rule on appellant’s prior motion for a mistrial nor was it brought up by his public defender. Following his conviction and sentence, appellant’s appeal ensued.
Appellant argues on appeal that trial counsel was ineffective. Since this is a direct appeal, trial counsel’s conflict of interest thus must appear on the face of the record. Jones v. State, 815 So.2d 772, 772 (Fla. 4th DCA 2002). We therefore conduct a de novo review of the record. See Curtis v. State, 204 So.3d 463, 464 (Fla. 4th DCA 2016).
The Sixth Amendment guarantees criminal defendants the right to effective assistance of counsel and representation free of conflict. Quince v. State, 732 So.2d 1059, 1064 (Fla. 1999). When determining whether counsel’s representation was free of conflict, we apply the conflict of interest test as annunciated in Cuyler v. Sullivan, 446 U.S. 335, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980).
The Florida Supreme Court has described the Cuyler test as follows:
[I]n order to establish an ineffectiveness claim premised on an alleged, conflict of interest the defendant must “establish that an actual conflict of interest adversely affected his lawyer’s performance.” Cuyler, 446 U.S. at 350, 100 S.Ct. 1708; see also Quince v. State, 732 So.2d 1059, 1065 (Fla. 1999). A lawyer suffers from an actual conflict of interest when he or she “actively represents conflicting interests.” Cuyler, 446 U.S. at 350, 100 S.Ct. 1708. To demonstrate an actual conflict, the defendant must identify specific evidence in the record thát suggests that his or her interests were compromised. See Herring v. State, 730 So.2d 1264, 1267 (Fla. 1998), A possible, speculative or merely hypothetical conflict is “insufficient to impugn a criminal conviction.” Cuyler, 446 U.S. at 350, 100 S.Ct. 1708. “[U]ntil a defendant shows that his counsel actively represented conflicting interests, he has not established the constitutional predicate for his claim of ineffective assistance.” Id. If a defendant successfully demonstrates the existence of an actual conflict, the defendant must also show that this conflict had an adverse effect upon his lawyer’s representation.
Hunter v. State, 817 So.2d 786, 791-92 (Fla. 2002).
Thus, the test from Cuyler, as applied in Hunter, requires appellant to demonstrate, first, that an actual conflict existed and, second, that the conflict adversely affected the attorney’s perform- *636 anee. Even if we assume that the facts of this case, where the attorney worked as both a prosecutor and defense counsel on the very same case, met the first prong of Hunter, appellant has failed to demonstrate that “the conflict adversely affected the lawyer’s representation.”[3] Brown v. State, 894 So.2d 137, 157 (Fla. 2004). Appellant “must identify specific evidence in the record that suggests his interests were impaired or compromised for the benefit of the lawyer or another party.” Id. See also State v. Alexis, 180 So.3d 929, 937 (Fla. 2015). (“Some adverse or detrimental effect on the representation, however, is required in order to establish an actual conflict of interest.”); People v. Abar, 99 N.Y.2d 406, 410-11, 757 N.Y.S.2d 219, 786 N.E.2d 1255 (2003) (affirming where the record showed a former prosecutor’s “conflict did not operate on the defense”).
Since appellant is unable to identify a single instance where trial counsel’s prior participation as a prosecutor “adversely affected” or compromised her representation of appellant, appellant asks us to fore-go requiring a showing of adverse effects and to adopt a “per se” rule as annunciat-ed in United States v. Ziegenhagen, 890 F.2d 937 (7th Cir. 1989). In Ziegenhagen, the court stated that “government employment in a prosecutorial role against one defendant and subsequent representation of that defendant in a defense capacity is not proper.” Id. at 940. The court found there was an actual conflict and presumed that the prior representation prejudiced the defendant.
Cuyler and Hunter mandate that this court reject any proposed “per se” rule and instead require appellant to demonstrate that the conflict had an adverse effect on his attorney’s performance. As stated before, appellant must identify specific evidence in the record showing his interests'were compromised. See Cuyler, 446 U.S. at 350, 100 S.Ct. 1708; Hunter, 817 So.2d at 791-92. See also Mickens v. Taylor, 535 U.S. 162, 174, 122 S.Ct. 1237, 152 L.Ed.2d 291 (2002) (holding the defendant must “establish that the conflict of interest adversely affected his counsel’s performance”).
Although appellant argues for adoption of a per se rule for his own benefit, interestingly Florida Bar Rule 4-1.11, governing the conduct of former public employees in the representation of a private client, states a lawyer “shall not otherwise represent a client in connection with a matter in which, the lawyer participated personally and substantially as a public officer or employee, unless the appropriate government agency gives its informed consent, confirmed in writing, to the representation.” (emphasis added). The record before us does not indicate whether ■ the state attorney’s office consented to the former assistant state attorney’s representation of appellant on the same case in which she was the prosecutor. The comment to the rule states that the bar rule is intended to prevent a lawyer “from exploiting public office for the advantage of.another client.” Thus, the main thrust of this rule is to protect the public office and not necessarily the private client.
*637 The Ninth Circuit, when considering the practice of switching sides by attorneys, stated that “[w]e by no means endorse the practice of switching sides in criminal cases; we merely hold that it does not necessarily create a conflict of interest for constitutional purposes, and that it did not in fact do so here. The practice may well raise serious ethical problems for practitioners.” Maiden v. Bunnell, 35 F.3d 477, 481 n.4 (9th Cir. 1994). Similarly, based on the record before us, we express no opinion as to the ethicality of the former prosecutor’s conduct in this case, but merely state that appellant did not meet the standard set in Cuyler and Hunter.
Finally, appellant argues that the trial court “knew or should have known” of the conflict and should have inquired further. The state responds that regardless, appellant must still demonstrate that conflict affected counsel’s performance. “When the claim is that the trial court failed to conduct an inquiry about a potential conflict which it knew or should have known about, the claimant must show that a conflict of interest affected counsel’s performance.” Alexis, 180 So.3d at 936. Once again, appellant can provide no evidence in the record that his trial attorney’s prior prosecutorial work in the same case impacted or affected her representation of him. In conclusion, based on Cuyler and Hunter, we affirm.[4]

Affirmed.

Warner and Taylor, JJ., concur.

. The grand theft count was nolle prossed before trial.

. Faretta v. California, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975).

. Although we assume the satisfaction of the first prong for the purposes of this opinion, , we note that McCaskill v. State, 638 So.2d 567 (Fla. 5th DCA 1994), presents somewhat similar facts to the present case yet did not find the prosecutor had a conflict of interest. In McCaskill, a post-conviction case, a prosecutor filed the original information and later came to represent the defendant. However, in that case, the prosecutor came to work for the defendant specifically at the defendant's request, Furthermore, the information was amended, and the former prosecutor-turned-defense attorney did not file the amended information.

. This affirmance is without prejudice to appellant filing a timely motion for post-conviction relief.